ENOSBURG FALLS *v.* HARTFORD STEAM BOILER INSPECTION
& INSURANCE CO. ET AL.

(85 A2d 577)

November Term, 1951.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and BLACKMER, JJ.

Opinion Filed January 2, 1952.

*Henry F. Black* and *Franklin S. Billings, Jr.,* for defendant Vermont Mutual Fire Insurance Co.

*Hunt & Hunt* and *Franklin W. Stevenson* (of Hartford, Conn.) for defendant Hartford Steam Boiler Inspection and Insurance Co.

*Keith Brown* and *Austin & Edmunds* for the plaintiff.

ADAMS, J.   This is a bill in chancery brought by the plaintiff against the two defendants to determine the liability and amount thereof of each defendant to the plaintiff on insurance policies issued by each defendant to the plaintiff.   It was alleged that the liability was by reason of an electrical disturbance that was followed

by fire and occurred in the plaintiff's electric light plant on July 6th, 1947. It was heard by the Chancellor on the bill of complaint, answer of each defendant, replication to each answer and oral testimony. Findings of fact were made and filed. A decree was entered setting forth the amount of the liability of each defendant and ordering payment thereof with interest. For convenience the defendants will be hereafter referred to as Hartford and Vermont respectively. The case is here on exceptions of each defendant. Vermont has, however, waived its exceptions. Hartford's exceptions are to certain findings and to the decree.

We first take up the exceptions to the findings. They are to three findings, namely;—numbers 18, 19 & 20. They may be considered collectively. These findings are as follows:

> "18. The proportion of this joint loss to be allocated to Hartford is 75/90 or $12,033.87 and to Vermont 15/90 or $2,405.62. In addition to Hartford's share of the joint loss is an item of $2,196.25 which is not assessable to Vermont, making a total of $14,-230.12 as Hartford's liability."

> "19. On October 7, 1948, Hartford paid to the Village $8,576.08, at which time interest in the amount of $455.36 had accrued. This payment left a balance due to the Village of $6,109.40. To the date of these findings interest in the amount of $837.98 has accrued, making the amount due from Hartford $6,-947.38."

> "20. From the amount allocated to Vermont of $2,405.62 there is an amount of $100 deductible by the terms of the policy, leaving a net of $2,305.62. Interest on this item from March 25, 1948, to the date of these findings amounts to $503.38, making the amount owing by Vermont to the Village $2,809.00."

■ The exceptions are, in substance, that the computations and allocations in these findings are contrary to and against the provisions of the policies. They set forth fully Hartford's theory as to how the computations and allocations should have been made. These findings are plainly conclusions of law and cannot stand if they are inconsistent with the findings upon which they are based. *Abatiell*

v. *Morse,* 115 Vt 254, 259, 56 A2d 464; *Abraham* v. *Insurance Company of North America,* 117 Vt 75, 84 A2d 670.

As neither defendant questions some liability and the only question before us is the computation and allocation of the loss it is not necessary to detail any of the findings at length except those pertaining to the terms of the policies regarding the question here presented. It appears from the findings that the plaintiff had in its electric light plant a large General Electric generator; that on July 6th, 1947, a bolt of lightning demolished a lightning arrestor and entered the generator; that there was a fire inside the generator which was an accidental burning of the generator caused by lightning and that at the time of the fire the property in question was covered by two insurance policies, one issued by Hartford in the sum of $75,000. and the other issued by Vermont for $18,000. of which $15,000. coverage was on the property in question. Then follows this finding:

> "11. These policies are Plaintiff's Exhibits No. 1 and No. 2, and together with all schedules and endorsements and provisions thereof, except that clause in the Vermont policy, Plaintiff's Exhibit No. 2, entitled 'Reduce Rate Contribution Clause,' which clause was stamped 'void' at the time of the issuance of the policy, are found as facts."

The Chancellor then made certain specific findings in regard to the policies and quoted certain provisions thereof. However, in their briefs and on oral argument the attorneys referred to and relied upon some provisions of the policies not so specifically found, relying upon finding No. 11 as enabling them so to do. When their attention was called to the matter they agreed that we might refer to the policies in aid of the finding for the provisions upon which they relied so that we might decide the case with the question fully presented before us.

In view of this situation we take occasion to say again that we have repeatedly held that exhibits cannot be made a part of the findings by reference only and findings cannot be supplemented in this manner. *Bardwell* v. *Commercial Assurance Co. Ltd.,* 105 Vt 106, 111, 163 A 633, and cases cited; *Mancini* v. *Thomas,* 113 Vt 322, 328, 34 A2d 105; *Ledoux* v. *Railway Express Agency, Inc.,* 113 Vt 480, 482, 35 A2d 665. We recently called attention to it

again as pertaining to an agreed statement of facts. *Abraham* v. *Insurance Company of North America, supra.* A finding that finds a certain exhibit by reference as a fact amounts to the same thing and no more than making it a part of the findings by reference only.

The Chancellor then found that Hartford's total liability from an accident as defined in schedule 4 covering the generator was subject to the limit per accident of $75,000; that the policy provided insurance against loss on property directly damaged by "accident" which was defined as respects "breakdown coverage" afforded in this case as "a sudden and accidental burning out of the object;" that the generator was a part of the object and that Hartford was liable for its share of the damage caused by "burning out" (the electrical injury and ensuing fire) which occurred on July 6, 1947.

Findings No. 14 and No. 15 are as follows:

> "14. The Hartford policy further provides: '3. In the event of a property loss to which both this insurance and other insurance carried by the assured apply, herein referred to as "joint loss" * * * * (b) the Company shall be liable only for the proportion of the said joint loss that the amount which would have been payable under this policy on account of said loss had no other insurance existed bears to the combined total of said amount and the amount which would have been payable under all other insurance on account of said loss had there been no insurance under this policy; but this clause (b) shall apply only in case the policies affording such other insurance contain a similar clause.'

> "15. The Vermont policy provides by endorsement under paragraphs 2, 3 and 4 as follows: '2 If electrical appliances or devices of any kind, including wiring are covered under this policy, this company shall not be liable for any electrical injury or disturbance to the electrical appliances or devices whether from artificial or natural causes, unless fire ensues, but if fire does ensue, then, in consideration of the rate of premium at which this policy is written, this company shall be liable for its proportion of loss or damage, caused by electricity if fire ensues, to the electrical appliances or

devices, provided such loss or damage caused by electricity and ensuing fire exceeds the sum of $100, but only for this company's pro rata part of the amount of such excess.

'3. It is also a condition of this policy, that if there be other fire insurance upon the property covered, this company shall be liable only for such proportion of any direct loss or damage caused by fire, or by lightning, or by other electrical injury or disturbance if fire ensues, as the amount of this policy bears to the whole amount of fire insurance applying, whether such other insurance contains a similar clause or not, subject, however, to the limitation of paragraph 4.

'4. It is a condition of this policy that if the insured has insurance other than fire insurance covering a joint loss as hereinafter defined, the liability under this policy for said joint loss shall not exceed this company's pro rata share (as stipulated in paragraph 3 hereof) of that proportion of said joint loss that the amount which would have been payable under all fire insurance on account of said joint loss, assuming such other insurance did not exist, bears to the combined total of said amount and the amount which would have been payable under such other insurance on account of said joint loss, assuming fire insurance did not exist, whether other policies covering said loss contain a similar clause or not.

'The words "joint loss" as used in the foregoing mean that portion of the loss in excess of the highest deductible, if any, to which fire insurance and such other insurance both apply.'

"Consequently Vermont is liable for its share of the damage incident to the fire of July 6, 1947."

It was then found that it was conceded and stipulated by the defendants that if jointly liable the amount of such liability was $14,439.49 which became due and payable on March 25, 1948.

The claim and position of Hartford is (1) that Hartford's policy is "insurance other than fire insurance" under paragraph 4 (part of finding 15) of the Vermont policy; (2) that clause (b) of condi-

tion 3 of its policy (finding 14) is similar to paragraph 4 of the Vermont policy and (3) that applying these clauses the joint loss is apportioned on a 50/50 basis.

The claim and position of Vermont is, as stated in its brief, that the sole question involved is whether or not under paragraph 3 (part of finding 15) of its policy the Hartford policy is "other fire insurance upon the property covered"; that is, so the joint loss is apportioned under that paragraph on a pro rata basis according to the amount of each policy on the property covered, namely; 75/90 to Hartford and 15/90 to Vermont. It says in its brief "We believe and stand upon the proposition that the Hartford also insured against fire."

Although they are set out in the findings only by reference to which we have referred, the defendants have called our attention to many of the provisions of the Hartford policy and also to the Vermont policy, so we examine them as was agreed we might do. Before doing so, however, it is advisable that we state some general rules that are applicable.

■ Where each policy stipulates to pay the proportion of the loss which the amount insured by it bears to the whole insurance on the property the contracts are separate and. independent of each other. *Hanover Fire Insurance Co.* v. *Brown,* 77 Md 64, 25 A 989, 27 A 314; 29 Am Jur, Insurance, § 1333 ; *Fitzsimmons* v. *City Fire Insurance Co.,* 18 Wis 234, 46 CJS, Insurance, § 1207, p. 151.

■ Every rule of construction in apportioning losses must yield to the right of the insured to be fully indemnified. Appleman on Insurance Law & Practice, Vol. 6, § 3905, p. 270 ; *Employers Casualty Co.* v. *Ragley,* Texas Civ App, 197 SW2d 536 ; 45 CJS, Insurance, § 922, p. 1035.

■ The language of an insurance contract is to be strictly construed against the insurer, although the entire contract is to be construed together for the purpose of giving force and effect to every clause. Equivocation and uncertainty are to be resolved in favor of the insured and against the insurer. If clear and unambiguous the provisions are to be given force and effect. *Allen* v. *Berkshire Mutual Fire Insurance Co.,* 105 Vt 471, 474-5, 168 A 698, 89 ALR 460, and cases cited.

■ It is the general rule that when the terms of a contract of insurance are ambiguous or fairly susceptible of two different constructions, that construction will be adopted that is most favorable

to the insured; however, it is equally well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and, if they are plain and unambiguous, their terms are to be taken in their plain, ordinary and popular sense. *Johnson* v. *Hardware Mutual Casualty Co.,* 108 Vt 269, 277, 187 A 788.

▪ Contracts of insurance, like other contracts, must receive a practical, reasonable and fair interpretation consonant with the apparent object and intent of the parties. Strained or forced constructions of insurance contracts are to be avoided. 29 Am Jur, Insurance, § 158.

Giving effect to these rules, is the Hartford policy "other fire insurance upon the property covered" so that the loss comes within the pro rating provision of paragraph 3 of clause B of the Vermont policy? In other words, was it concurrent or contributing insurance?

▪ Insurance is not concurrent unless the policies are on the same property or some part thereof, on the same interest in the property, against the same risk and in favor of the same party. 26 CJ 363; *Nobbe* v. *Equity Fire Insurance Co.,* 210 Minn 93, 297 NW 349; 45 CJS, Insurance, § 922, p. 1033.

▪ To constitute other or contributing insurance the policies must cover the same interest, the same property and the same risk. *Turk* v. *Newark Fire Insurance Co.,* 4 F2d 142, 6 F2d 533, 43 ALR 496.

▪ Concurrent insurance is insurance which to any extent insures the same interest against the same casualty at the same time as the primary insurance, on such terms that the insurers would bear proportionately the loss sustained within the provisions of both policies. It designates insurance placed in different companies covering the same risk. 44 CJS, Insurance, § 48, p. 495; *Oppenheim* v. *Fireman's Fund Insurance Co.,* 119 Minn 417, 138 NW 777.

▪ As a prerequisite to enforcing contribution between insurers, it is essential that the same risk have been insured. 46 CJS, Insurance, § 1207, p. 150.

▪ We agree with Vermont that the character of a particular policy is to be determined by the nature of the contract it expresses rather than by the nomenclature of the policy or avowed purposes of the company that issues it. 44 CJS, Insurance, § 1, p. 474. Fire insurance or a fire insurance policy, in the sense of its

subject matter, is a contract of indemnity by which the insurer for a consideration agrees to indemnify the insured against loss of or damage to property by fire. 44 CJS, Insurance, § 14, p. 477. It (a fire insurance policy) is intended to cover every loss, damage or injury proximately caused by fire and every loss necessarily following directly and immediately from such peril or from the surrounding circumstances, the operation and influence of which could not be avoided. Appleman, Insurance Law and Practice, Vol. 5, § 3082, p. 210; *Fogarty* v. *Fidelity & Casualty Co.,* 122 Conn 245, 188 A 481.

An examination of the Vermont and Hartford policies discloses that they are entirely different in their form, substance and contracts. The Vermont policy insures, (1) a certain building, (2) electrical equipment and machinery, (3) stock of electrical supplies and materials and (4) office furniture and fixtures. Each of the four classes is insured in a specific amount against direct loss by fire and lightning except that on electrical appliances and devices there is no liability for an electrical injury or disturbance to the same unless fire ensues. The Hartford policy insures against loss from an accident as defined in the policy to an object described in it. The objects are set forth in separate schedules each describing different items of equipment and many types of accidents are provided for in the coverage. Vermont claims that because the Hartford policy defines an accident as "a sudden and accidental burning out of the object or any part thereof, but not the burning out of insulation unless accompanied by a short-circuit or of any fuse or brush" and because it excludes "a loss from fire outside the object (or from the use of water or other means to extinguish fire)," thereby, by implication, including fire within the object, the policy, as applied to the generator in question described in schedule 4, is one of "other fire insurance upon the property covered" as specified in paragraph 3 of clause B of the Vermont policy. We do not agree.

Schedule 4 covers a number of other types of accidents to the generator in addition to "a sudden and accidental burning out." That schedule shows that the coverage is against "breakdown". It happens incidentally that in this particular case both policies did cover a portion of the same resulting damage but both did not cover the entire loss. Hartford's coverage is much more extensive. The policies did not cover the same risk On this particular loss Hartford is liable for $2,196.25 in addition to the loss covered by both policies. The Hartford policy narrowly limits the loss by fire to

within the object resulting from accident and insures against many kinds of damage other than fire. It afforded insurance of a specified, particular, definite and restricted kind. It was not a general fire insurance policy as to the generator. The fire was not the proximate cause of the damage to the object. The accidental burning out was caused by lightning. Fire ensued and because of that Vermont became liable under its policy and Hartford became liable because of the accident. Damage by fire in the Hartford policy was only incidental to the main coverage.

In *Kanawha Inv. Co.* v. *Hartford Steam Boiler Inspection & Insurance Co.* 107 W Va 555, 149 SE 605, the defendant had a policy of insurance on certain electrical machinery in a building. The coverage was for damage caused by breakdown of any of the machinery within the terms of the policy. An elevator motor broke down and the breakdown was accompanied by fire which was inside and did not extend beyond the housing. It was held that regular fire insurance on the building which included the motor in question was not similar to the insurance carried by the defendant and the fire insurance did not share in the loss. A policy covering perils of the sea including loss or destruction by fire does not thereby become a fire insurance policy instead of a marine policy. *King County* v. *United States Merchants' & Shippers' Ins. Co.,* 150 Wash 626, 274 P 704.

The Vermont policy is a standard fire insurance policy. It is plain that what is meant by "other fire insurance" in paragraph 3 of clause B of that policy is fire insurance of the same general nature and type as that in the policy in which the expression is used. It is intended to operate when more than one company have such fire insurance policies covering the risk and loss and give Vermont the benefit of such other fire insurance. By that provision each company is liable for such proportion of the loss or damage as the amount of its policy bears to the whole amount of such fire insurance applying. When this paragraph is also read in connection with paragraph 4, as it must be, that conclusion is further justified. Paragraph 4 refers to two kinds of insurance; first, insurance other than fire insurance and second, liability under this policy (Vermont's) pro rata share (as stipulated in paragraph 3) which is fire insurance. Then applying the formula set forth all fire insurance is liable for one-half of the joint loss and all other insurance is liable for the other half. Vermont would be liable for its pro rata share of all fire

insurance and as it has in the instant case all the fire insurance, its liability here is one half of the joint loss, subject, however, to the $100. deductible on its share under paragraph 2 of its policy.

Paragraph 4 in the Vermont policy is similar to clause (b) of condition 3 in the Hartford policy which is set forth in finding 14. They contain the same formula.

It follows that findings 18, 19 and 20 are inconsistent with the findings upon which they are based and Hartford's exceptions to them are sustained.

Hartford's exception to the decree raises the question whether it is warranted by the pleadings and supported by the findings. *Vermont Motor Co. Inc.* v. *Monk,* 116 Vt 309, 311, 75 A2d 671. What we have said in regard to the exceptions to the findings disposes of this exception. It is sustained.

Under the terms of the policies, Hartford and Vermont are liable for the stipulated joint loss of $14,439.49 on a 50/50 basis. Hartford is also liable for an additional amount of $2,196.25 for which Vermont is not liable. This fully indemnifies the plaintiff as the $100. deductible under the Vermont policy was deducted before the stipulated joint loss figure was arrived at and it is included in the above additional amount for which Hartford is liable. Hartford should have credit for $8,576.08 which it paid on October 7th, 1948. Interest should be figured from March 5, 1948, with proper adjustment for Hartford's credit.

*Decree reversed and cause remanded. Let a new decree be entered not inconsistent with the views expressed in this opinion. Let the plaintiff and the defendant Hartford each recover its costs against the defendant Vermont in this court.*